| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Mark H. Rogge (CA Bar #298381)<br>Dickinson Wright RLLP<br>615 National Avenue, Suite 220<br>Mountain View, CA 94043<br><br>TELEPHONE NO.: 408-701-6146  FAX NO.:<br>ATTORNEY FOR *(Name):* SOVEREIGN LLC | |

| NAME OF COURT: **UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA** |
|---|
| STREET ADDRESS: 255 East Temple Street |
| MAILING ADDRESS: |
| CITY AND ZIP CODE: Los Angeles, 90012 |
| BRANCH NAME: Edward Roybal Federal Building and United States Courthouse |

PLAINTIFF: SOVEREIGN LLC

DEFENDANT: SULEMAN IDDRISSU, et al

| **APPLICATION FOR** | CASE NUMBER: |
|---|---|
| ☐ RIGHT TO ATTACH ORDER   ☐ TEMPORARY PROTECTIVE ORDER<br>☒ ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT<br>☐ ORDER FOR ISSUANCE OF ADDITIONAL WRIT OF ATTACHMENT<br><br>☐ After Hearing   ☒ Ex Parte<br>☐ Against Property of Nonresident | 23-mc-00067 |

1. Plaintiff *(name):* SOVEREIGN LLC
   applies   ☐ after hearing   ☒ ex parte   for
   a. ☒ a right to attach order and writ of attachment.
   b. ☐ an additional writ of attachment.
   c. ☐ a temporary protective order.
   d. ☐ an order directing the defendant to transfer to the levying officer possession of
      (1) ☐ property in defendant's possession.
      (2) ☐ documentary evidence in defendant's possession of title to property.
      (3) ☐ documentary evidence in defendant's possession of debt owed to defendant.

2. Defendant *(name):* SULEMAN IDDRISSU, et al.
   a. ☐ is a natural person who
      (1) ☐ resides in California.
      (2) ☒ does not reside in California.
   b. ☐ is a corporation
      (1) ☐ qualified to do business in California.
      (2) ☐ not qualified to do business in California.
   c. ☐ is a California partnership or other unincorporated association.
   d. ☐ is a foreign partnership that
      (1) ☐ has filed a designation under Corporations Code section 15800.
      (2) ☐ has not filed a designation under Corporations Code section 15800.
   e. ☐ is other *(specify):*

3. Attachment is sought to secure recovery on a claim upon which attachment may issue under Code of Civil Procedure section 483.010.

4. Attachment is not sought for a purpose other than the recovery on a claim upon which the attachment is based.

5. Plaintiff has no information or belief that the claim is discharged or the prosecution of the action is stayed in a proceeding under Title 11 of the United States Code (Bankruptcy).

CV-04F (05/18)<br>(AT-105 [Rev. January 1, 2000])

**APPLICATION FOR RIGHT TO ATTACH ORDER, TEMPORARY PROTECTIVE ORDER, ETC. (Attachment)**

Code of Civil Procedure,<br>§§ 482.030, 484.010 et seq.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| SOVEREIGN LLC v. SULEMAN IDDRISSU, et al. | 23-mc-00067 |

6. ☒ Plaintiff's claim or claims arise out of conduct by the defendant who is a natural person of a trade, business, or profession. The claim or claims are not based on the sale or lease of property, a license to use property, the furnishing of services, or the loan of money where any of the foregoing was used by the defendant primarily for personal, family, or household purposes.

7. The facts showing plaintiff is entitled to a judgment on the claim on which the attachment is based are set forth with particularity in the
   a. ☐ verified complaint.
   b. ☐ attached affidavit or declaration.
   c. ☒ following facts *(specify)*:
       An out of district judgment was filed and registered

8. The amount to be secured by the attachment is: $276,664.81
   a. ☒ which includes estimated costs of: $49.00
   b. ☐ which includes estimated allowable attorney fees of: $

9. Plaintiff is informed and believes that the following property sought to be attached for which a method of levy is provided is subject to attachment:
   a. ☐ Any property of a defendant who is **not** a natural person.
   b. ☒ Any property of a nonresident defendant.
   c. ☒ Property of a defendant who is a natural person that is subject to attachment under Code of Civil Procedure section 487.010 described as follows *(specify)*:
       See attached

   d. ☐ Property covered by a bulk sales notice with respect to a bulk transfer by defendant on the proceeds of the sale of such property *(describe)*:

   e. ☐ Plaintiff's pro rata share of proceeds from an escrow in which defendant's liquor license is sold *(specify license number)*:

10. Plaintiff is informed and believes that the property sought to be attached is not exempt from attachment.

11. ☐ The court issued a Right to Attach Order on *(date)*:
       *(Attach a copy.)*

12. ☒ Nonresident defendant has not filed a general appearance.

**APPLICATION FOR RIGHT TO ATTACH ORDER, TEMPORARY PROTECTIVE ORDER, ETC. (Attachment)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| SOVEREIGN LLC v. SULEMAN IDDRISSU, et al. | 23-mc-00067 |

13. a. Plaintiff ☐ alleges on ex parte application for order for writ of attachment
      ☐ is informed and believes on application for temporary protective order
    that plaintiff will suffer great or irreparable injury if order is not issued before the matter can be heard on notice because

    (1) ☐ it may be inferred that there is a danger that the property sought to be attached will be
        (a) ☐ concealed.
        (b) ☐ substantially impaired in value.
        (c) ☐ made unavailable to levy by other than concealment or impairment in value.

    (2) ☒ defendant has failed to pay the debt underlying the requested attachment and is insolvent as defined in Code of Civil
        Procedure section 485.010, subdivision (b)(2).

    (3) ☐ a bulk sales notice was recorded and published pursuant to Division 6 of the Commercial Code with respect to a bulk
        transfer by the defendant.

    (4) ☐ an escrow has been opened under the provisions of Business and Professions Code section 24074 with respect to
        the sale by the defendant.

    (5) ☐ other circumstances *(specify):*

   b. The statements in item 13a are established by   ☐ the attached affidavit or declaration
    ☒ the following facts *(specify):*
        See default judgment

14. ☐ Plaintiff requests the following relief by temporary protective order *(specify):*

15. Plaintiff
   a. ☐ has filed an undertaking in the amount of: $
   b. ☒ has not filed an undertaking.

Date: May 23, 2023

Mark H. Rogge
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
(TYPE OR PRINT NAME OF PLAINTIFF OR PLAINTIFF'S ATTORNEY)

*Mark Rogge*
▶ _____
(SIGNATURE OF PLAINTIFF OR PLAINTIFF'S ATTORNEY)

## DECLARATION

I declare under penalty of perjury that the foregoing is true and correct.

Date: May 23, 2023

Mark H. Rogge
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
(TYPE OR PRINT NAME)

*Mark Rogge*
▶ _____
(SIGNATURE OF DECLARANT)

16. Number of pages attached: _82_

**APPLICATION FOR RIGHT TO ATTACH ORDER, TEMPORARY PROTECTIVE ORDER, ETC. (Attachment)**      **Page three of three**

# EXHIBIT 1

CLTA Preliminary Report Form
(Rev. 11/06)

Order Number:  0625-6985936
Page Number:  1



# First American Title Company

**3400 Central Avenue, Suite 100**
**Riverside, CA 92506**
California Department of Insurance License No. 151

Title Officer:

Phone:
Fax No.:
E-Mail:

Porscha Peterson / Christina Barnes

(951)787-1762
(866)292-6890
fahq-ra-rvtitle@firstam.com

E-Mail Loan Documents to:

Property:

Lenders please contact the Escrow Officer for email address for sending loan documents.

2803 S Canfield Ave
Los Angeles, CA 90034

## PRELIMINARY REPORT

In response to the above referenced application for a policy of title insurance, this company hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an Exception below or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Exhibit A attached. *The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties.* Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Exhibit A. Copies of the policy forms should be read. They are available from the office which issued this report.

**Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit A of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

**Please be advised that any provision contained in this document, or in a document that is attached, linked or referenced in this document, that under applicable law illegally discriminates against a class of individuals based upon personal characteristics such as race, color, religion, sex, sexual orientation, gender identity, familial status, disability, national origin, or any other legally protected class, is illegal and unenforceable by law.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

Order Number: **0625-6985936**
Page Number:  2

Dated as of April 13, 2023 at 7:30 A.M.

The form of Policy of title insurance contemplated by this report is:

To Be Determined

A specific request should be made if another form or additional coverage is desired.

Title to said estate or interest at the date hereof is vested in:

Suleman Iddrissu, A Single Man

The estate or interest in the land hereinafter described or referred to covered by this Report is:

FEE

The Land referred to herein is described as follows:

(See attached Legal Description)

At the date hereof exceptions to coverage in addition to the printed Exceptions and Exclusions in said policy form would be as follows:

1.     General and special taxes and assessments for the fiscal year 2023-2024, a lien not yet due or payable.

2.     The lien of supplemental taxes, if any, assessed pursuant to Chapter 3.5 commencing with Section 75 of the California Revenue and Taxation Code.

3.     Any and all offers of dedications, conditions, restrictions, easements, notes and/or provisions shown or disclosed by the filed or recorded map referred to in the legal description including but not limited to: PUBLIC UTILITIES and incidental purposes affecting said land.

4.     An easement for UTILITY and incidental purposes in the document recorded NOVEMBER 07, 1947 as BOOK 25418, PAGE 281 of Official Records.

5.     Covenants, conditions, and restrictions in the document recorded NOVEMBER 07, 1947 as BOOK 25418, PAGE 281 of Official Records, which provide that a violation thereof shall not defeat or render invalid the lien of any first mortgage or deed of trust made in good faith and for value, but deleting any covenant, condition, or restriction, if any, indicating a preference, limitation, or discrimination based on race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, handicap, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, to the extent that such covenants, conditions or restrictions violate applicable state or federal laws. Lawful

restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

6.    AN ENCROACHMENT ONTO SAID LAND, AS DISCLOSED BY A SURVEY OR AN INSPECTION OF IMPROVEMENTS SITUATED ON LAND, ADJACENT.

ON THE: NORTH
CONSISTING OF: 2 FEET OF SAID LAND.

7.    A deed of trust to secure an original indebtedness of $100,000.00 recorded APRIL 12, 2005 as INSTRUMENT NO. 05-839314 OF OFFICIAL RECORDS.
Dated:                             MARCH 17, 2005
Trustor:                           CARMEN A. RISSMAN, A MARRIED PERSON, STUART E. RISSMAN, A MARRIED PERSON
Trustee:                           FIRST AMERICAN TITLE
Beneficiary:                       CHARLES SCHWAB BANK, N.A.

The above deed of trust states that it secures an equity line/revolving line of credit. Prior to the payment and suspension of the equity line/revolving line of credit, an instruction to suspend and close the equity line/revolving line of credit pursuant to CA Civil Code Section 2943.1 must be executed by the borrower.

8.    A deed of trust to secure an original indebtedness of $195,000.00 recorded AUGUST 20, 2012 as INSTRUMENT NO. 12-1236564 OF OFFICIAL RECORDS.
Dated:                             AUGUST 09, 2012
Trustor:                           STUART E. RISSMAN AND CARMEN A. RISSMAN, HUSBAND AND WIFE, AS TRUSTEES OF THE RISSMAN FAMILY TRUST, UNDER TRUST AGREEMENT DATED NOVEMBER 24, 1999
Trustee:                           LSI TITLE COMPANY.
Beneficiary:                       MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
LENDER:                            GREENLIGHT FINANCIAL SERVICES.

The effect of a document entitled "SUBSTITUTION OF TRUSTEE AND FULL RECONVEYANCE", recorded OCTOBER 25, 2021 as INSTRUMENT NO. 21-1602194 of Official Records.

Note: The Company will require satisfactory proof of full payment of the debt secured by said mortgage or deed of trust prior to removing this exception or insuring the contemplated transaction.

9.    A deed of trust to secure an original indebtedness of $1,050,000.00 recorded DECEMBER 22, 2021 as INSTRUMENT NO. 21-1897384 OF OFFICIAL RECORDS.
Dated:                             DECEMBER 16, 2021
Trustor:                           SULEMAN IDDRISSU, A SINGLE MAN
Trustee:                           LAWYERS TITLE COMPANY
Beneficiary:                       MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
LENDER:                            SPROUT MORTGAGE, LLC.

10.    The terms and provisions contained in the document entitled "MASTER COVENANT AND AGREEMENT" recorded MARCH 11, 2022 as INSTRUMENT NO. 22-284045 of Official Records.

11.    Water rights, claims or title to water, whether or not shown by the Public Records.

12.    The new lender, **if any**, for this transaction may be a Non-Institutional Lender. If so, the Company will require the Deed of Trust to be signed before a **First American approved notary**.

Order Number: **0625-6985936**
Page Number: 5

| INFORMATIONAL NOTES |
|---|

Note: The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than the certain amount set forth in any applicable arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. If you desire to review the terms of the policy, including any arbitration clause that may be included, contact the office that issued this Commitment or Report to obtain a sample of the policy jacket for the policy that is to be issued in connection with your transaction.

1.  General and special taxes and assessments for the fiscal year 2022-2023.

    | | |
    |---|---|
    | First Installment: | $8,885.54, PAID |
    | Penalty: | $0.00 |
    | Second Installment: | $8,885.53, PAID |
    | Penalty: | $0.00 |
    | Tax Rate Area: | 44-00067 |
    | A. P. No.: | 4301-001-032 |

2.  This report is preparatory to the issuance of an ALTA Loan Policy. We have no knowledge of any fact which would preclude the issuance of the policy with CLTA endorsement forms 100 and 116 and if applicable, 115 and 116.2 attached.

    When issued, the CLTA endorsement form 116 or 116.2, if applicable will reference a(n) Single Family Residence  known as 2803 S CANFIELD AVE, LOS ANGELES, CA.

3.  According to the public records, there has been no conveyance of the land within a period of twenty four months prior to the date of this report, except as follows:

    A document recorded OCTOBER 15, 2021  as INSTRUMENT NO. 21-1556647 of Official Records.

    From:   STUART E. RISSMAN AND CARMEN A. RISSMAN, HUSBAND AND WIFE
    To:     STUART E. RISSMAN AND CARMEN A. RISSMAN, HUSBAND AND WIFE,
            AS TRUSTEES OF THE RISSMAN FAMILY TRUST, UNDER TRUST
            AGREEMENT DATED NOVEMBER 24, 1999

    A document recorded OCTOBER 15, 2021  as INSTRUMENT NO. 21-1556648 of Official Records.

    From:   STUART E. RISSMAN AND CARMEN A. RISSMAN, HUSBAND AND WIFE,
            AS TRUSTEES OF THE RISSMAN FAMILY TRUST, UNDER TRUST
            AGREEMENT DATED NOVEMBER 24, 1999
    To:     SULEMAN IDDRISSU, A SINGLE MAN

    NOTE to proposed insured lender only: No Private transfer fee covenant, as defined in Federal Housing Finance Agency Final Rule 12 CFR Part 1228, that was created and first appears in the Public Records on or after February 8, 2011, encumbers the Title except as follows: None

    The map attached, if any, may or may not be a survey of the land depicted hereon. First American expressly disclaims any liability for loss or damage which may result from reliance on this map except to

Order Number: **0625-6985936**
Page Number: 6

the extent coverage for such loss or damage is expressly provided by the terms and provisions of the title insurance policy, if any, to which this map is attached.

Order Number: **0625-6985936**
Page Number:  7

## LEGAL DESCRIPTION

Real property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

LOT 135 OF TRACT NO. 14212, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 308, PAGE(S) 30 TO 32, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT ALL OIL, GAS, GASOLINE AND OTHER HYDROCARBON SUBSTANCES AND MINERALS RIGHTS IN AND UNDER SAID LAND, FOR AND DURING A PERIOD OF 30 YEARS FORM FEBRUARY 28, 1947 AND SO LONG THEREAFTER AS OIL, GAS, CASING -HEAD GAS OR OTHER HYDROCARBON SUBSTANCES OR MINERALS MAY BE PRODUCED FROM SAID PROPERTY IN QUANTITIES DEEMED BY GRANTORS, THEIR EXECUTORS, ADMINISTRATORS, HEIRS OR ASSIGNS, TO BE SUFFICIENT FOR PAYING OR COMMERCIAL PRODUCTION, OR SO LONG THEREAFTER AS THE GRANTORS, THEIR EXECUTORS, ADMINISTRATOR OR ASSIGNS, DIRECTLY OR INDIRECTLY SHALL BE ENGAGED IN ANY OPERATION FOR DRILLING DEEPENING, REPAIRING OR REHABILITATING ANY WELLS INTO THE SUBSURFACE GEOLOGICAL HORIZONS OF SAID PROPERTY, WITHOUT HOWEVER, THE RIGHT OF SURFACE ENTRY UPON THE LAND HEREIN DESCRIBED FOR ANY OF THE PURPOSES ABOVE RESERVED. ALL OPERATIONS FOR THE RECOVERY OF SAID SUBSTANCES SHALL BE CONDUCTED BY MEANS OF SLANT DRILLING OPERATIONS FROM SURFACE LOCATIONS WHICH ARE LOCATED ON LAND OTHER THAN THOSE ABOVE DESCRIBED, AS RESERVED BY MARIE LOUISE CANET AND NARCISSE S. GARNIER, IN DEED RECORDED APRIL 11, 1947 IN BOOK 24433, PAGE 335, OF OFFICIAL RECORDS.

APN: 4301-001-032

Order Number: **0625-6985936**
Page Number: 8



Order Number: **0625-6985936**
Page Number:  9

### *NOTICE*

Section 12413.1 of the California Insurance Code, effective January 1, 1990, requires that any title insurance company, underwritten title company, or controlled escrow company handling funds in an escrow or sub-escrow capacity, wait a specified number of days after depositing funds, before recording any documents in connection with the transaction or disbursing funds. This statute allows for funds deposited by wire transfer to be disbursed the same day as deposit. In the case of cashier's checks or certified checks, funds may be disbursed the next day after deposit. In order to avoid unnecessary delays of three to seven days, or more, please use wire transfer, cashier's checks, or certified checks whenever possible.

**EXHIBIT A**
**LIST OF PRINTED EXCEPTIONS AND EXCLUSIONS (BY POLICY TYPE)**
**CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE [(07-01-2021) v. 01.00]**
EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy and We will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  a.  any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
       i.   the occupancy, use, or enjoyment of the Land;
       ii.  the character, dimensions, or location of any improvement on the Land;
       iii. the subdivision of land; or
       iv.  environmental remediation or protection.
    b.  any governmental forfeiture, police, or regulatory, or national security power.
    c.  the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.
        Exclusion 1 does not modify or limit the coverage provided under Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23, or 27.
2.  Any power to take the Land by condemnation. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 17.
3.  Any defect, lien, encumbrance, adverse claim, or other matter:
    a.  created, suffered, assumed, or agreed to by You;
    b.  not Known to Us, not recorded in the Public Records at the Date of Policy, but Known to You and not disclosed in writing to Us by You prior to the date You became an Insured under this policy;
    c.  resulting in no loss or damage to You;
    d.  attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 5, 8.f., 25, 26, 27, 28, or 32); or
    e.  resulting in loss or damage that would not have been sustained if You paid consideration sufficient to qualify You as a bona fide purchaser of the Title at the Date of Policy.
4.  Lack of a right:
    a.  to any land outside the area specifically described and referred to in Item 3 of Schedule A; and
    b.  in any street, road, avenue, alley, lane, right-of-way, body of water, or waterway that abut the Land.
        Exclusion 4 does not modify or limit the coverage provided under Covered Risk 11 or 21.
5.  The failure of Your existing structures, or any portion of Your existing structures, to have been constructed before, on, or after the Date of Policy in accordance with applicable building codes. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 14 or 15.
6.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transfer of the Title to You is a:
    a.  fraudulent conveyance or fraudulent transfer;
    b.  voidable transfer under the Uniform Voidable Transactions Act; or
    c.  preferential transfer:
       i.   to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
       ii.  for any other reason not stated in Covered Risk 30.
7.  Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
8.  Negligence by a person or an entity exercising a right to extract or develop oil, gas, minerals, groundwater, or any other subsurface substance.
9.  Any lien on Your Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 9 does not modify or limit the coverage provided under Covered Risk 8.a. or 27.
10. Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

**LIMITATIONS ON COVERED RISKS**

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1% of Policy Amount Shown in Schedule A or $2,500 (whichever is less) | $10,000 |
| Covered Risk 18: | 1% of Policy Amount Shown in Schedule A or $5,000 (whichever is less) | $25,000 |
| Covered Risk 19: | 1% of Policy Amount Shown on Schedule A or $5,000 (whichever is less) | $25,000 |
| Covered Risk 21: | 1% of Policy Amount Shown on Schedule A or $2,500 (whichever is less) | $5,000 |

Order Number:  **0625-6985936**
Page Number:  11

**ALTA OWNER'S POLICY [(07-01-2021) V. 01.00]**
**CLTA STANDARD COVERAGE OWNER'S POLICY [(02-04-22) V. 01.00]**
EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.   a.   any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
        i.    the occupancy, use, or enjoyment of the Land;
        ii.   the character, dimensions, or location of any improvement on the Land;
        iii.  the subdivision of land; or
        iv.   environmental remediation or protection.
     b.   any governmental forfeiture, police, regulatory, or national security power.
     c.   the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.
Exclusion 1 does not modify or limit the coverage provided under Covered Risk 5 or 6.
2.   Any power of eminent domain. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 7.
3.   Any defect, lien, encumbrance, adverse claim, or other matter:
     a.   created, suffered, assumed, or agreed to by the Insured Claimant;
     b.   not Known to the Company, not recorded in the Public Records at the Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
     c.   resulting in no loss or damage to the Insured Claimant;
     d.   attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 9 or 10); or
     e.   resulting in loss or damage that would not have been sustained if consideration sufficient to qualify the Insured named in Schedule A as a bona fide purchaser had been given for the Title at the Date of Policy.
4.   Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transaction vesting the Title as shown in Schedule A is a:
     a.   fraudulent conveyance or fraudulent transfer;
     b.   voidable transfer under the Uniform Voidable Transactions Act; or
     c.   preferential transfer:
        i.    to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
        ii.   for any other reason not stated in Covered Risk 9.b.
5.   Any claim of a PACA-PSA Trust. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 8.
6.   Any lien on the Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 6 does not modify or limit the coverage provided under Covered Risk 2.b.
7.   Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.


NOTE: The 2021 ALTA Owner's Policy may be issued to afford either Standard Coverage or Extended Coverage. In addition to variable exceptions such as taxes, easements, CC&R's, etc., the Exceptions from Coverage in a Standard Coverage policy will also include the Western Regional Standard Coverage Exceptions listed below as numbers 1 through 7.  The 2021 CLTA Standard Coverage Owner's Policy will include the Western Regional Standard Coverage Exceptions listed below as numbers 1 through 7.

EXCEPTIONS FROM COVERAGE

Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This policy treats any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document are excepted from coverage.

This policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses resulting from the terms and conditions of any lease or easement identified in Schedule A, and the following matters:

1.   (a)  Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.   Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3.   Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4.   Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5.   (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.   Any lien or right to a lien for services, labor or material unless such lien is shown by the Public Records at Date of Policy.
7.   Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas,

uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

### 2006 ALTA OWNER'S POLICY (06-17-06)
EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a)  Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
        (i)   the occupancy, use, or enjoyment of the Land;
        (ii)  the character, dimensions, or location of any improvement erected on the Land;
        (iii) the subdivision of land; or
        (iv)  environmental protection;
    or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
        (b)  Any governmental police power.  This Exclusion 1(b) does not modify or limit the coverage provided  under Covered Risk 6.
2.  Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.  Defects, liens, encumbrances, adverse claims, or other matters
    (a)  created, suffered, assumed, or agreed to by the Insured Claimant;
    (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c)  resulting in no loss or damage to the Insured Claimant;
    (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
    (e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
    (a)  a fraudulent conveyance or fraudulent transfer; or
    (b)  a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

NOTE: The 2006 ALTA Owner's Policy may be issued to afford either Standard Coverage or Extended Coverage. In addition to variable exceptions such as taxes, easements, CC&R's, etc., the Exceptions from Coverage in a Standard Coverage policy will also include the Western Regional Standard Coverage Exceptions listed below as numbers 1 through 7.

EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1.  (a)  Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.  Any facts, rights, interests, or claims that are not shown in the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and that are not shown by the Public Records.
5.  (a)  Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.  Any lien or right to a lien for services, labor or material unless such lien is shown by the Public Records at Date of Policy.
7.  Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.



**This page is part of your document - DO NOT DISCARD**





## 20211556648



**Pages:
0004**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**10/15/21 AT 08:00AM**

| | |
|---|---:|
| FEES: | 28.00 |
| TAXES: | 8,400.00 |
| OTHER: | 0.00 |
| PAID: | 8,428.00 |



**L E A D S H E E T**



202110151070057

**00021353871**



012784086

**SEQ:
02**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**



*E502868*

RECORDING REQUESTED BY:
Progressive Title Company

AND WHEN RECORDED MAIL TO:
MAIL TAX STATEMENTS TO:

Suleman Iddrissu
2803 S Canfield Ave
Los Angeles ,CA   90034

THIS SPACE FOR RECORDER'S USE ONLY

Title Order No.: **4330121-03404**                                                    Escrow No.: **08-82043-WLP**

## GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S)

### DOCUMENTARY TRANSFER TAX IS $1,650.00
### CITY TRANSFER TAX $6,750.00

*80/44*

☒   computed on full value of property conveyed, or
☐   computed on full value less liens or encumbrances remaining at the time of sale.
☐   unincorporated area:                    ☒   City of **Los Angeles**

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**Stuart E Rissman and Carmen A. Rissman, husband and wife, as Trustees of the Rissman Family Trust, under Trust Agreement dated November 24, 1999**

hereby GRANT(S) to

**Suleman Iddrissu, a Single Man**

the real property in the City of Los Angeles, County of Los Angeles, State of California, described as:

Legal Description attached hereto as Exhibit "A" and made a part hereof

Commonly known as: **2803 S Canfield Ave, Los Angeles, CA   90034**

Parcel No. **4301-001-032**

**Dated: August 20, 2021**

**Signature page attached hereto
and made a part hereof**

**Title Order No.: 4330121-03404 032**          **Escrow No.: 08-82043-WLP**          **APN: 4301-001-**

## SIGNATURE PAGE

**Title of Document: Grant Deed** _____

**Date of Document: August 20, 2021** _____

The Rissman Family Trust, under Trust Agreement
dated November 24, 1999

_____          *Carmen A. Rissman*

By: Stuart E Rissman, Trustee          By: Carmen A Rissman, Trustee

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF _LOS ANGELES_
On _AUGUST 23, 2021_,
before me, _MB WASHINGTON_,
A Notary Public personally appeared
_STUART E. RISSMAN AND_
_CARMEN A. RISSMAN_
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**
WITNESS my hand and official seal.

Signature _____

(Seal)



ORDER NO. 4330121-03404

## EXHIBIT "A"

LOT 135 OF TRACT NO. 14212, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 308, PAGE(S) 30 TO 32, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT ALL OIL, GAS, GASOLINE AND OTHER HYDROCARBON SUBSTANCES AND MINERALS RIGHTS IN AND UNDER SAID LAND, FOR AND DURING A PERIOD OF 30 YEARS FORM FEBRUARY 28, 1947 AND SO LONG THEREAFTER AS OIL, GAS, CASING-HEAD GAS OR OTHER HYDROCARBON SUBSTANCES OR MINERALS MAY BE PRODUCED FROM SAID PROPERTY IN QUANTITIES DEEMED BY GRANTORS, THEIR EXECUTORS, ADMINISTRATORS, HEIRS OR ASSIGNS, TO BE SUFFICIENT FOR PAYING OR COMMERCIAL PRODUCTION, OR SO LONG THEREAFTER AS THE GRANTORS, THEIR EXECUTORS, ADMINISTRATOR OR ASSIGNS, DIRECTLY OR INDIRECTLY SHALL BE ENGAGED IN ANY OPERATION FOR DRILLING DEEPENING, REPAIRING OR REHABILITATING ANY WELLS INTO THE SUBSURFACE GEOLOGICAL HORIZONS OF SAID PROPERTY, WITHOUT HOWEVER, THE RIGHT OF SURFACE ENTRY UPON THE LAND HEREIN DESCRIBED FOR ANY OF THE PURPOSES ABOVE RESERVED. ALL OPERATIONS FOR THE RECOVERY OF SAID SUBSTANCES SHALL BE CONDUCTED BY MEANS OF SLANT DRILLING OPERATIONS FROM SURFACE LOCATIONS WHICH ARE LOCATED ON LAND OTHER THAN THOSE ABOVE DESCRIBED, AS RESERVED BY MARIE LOUISE CANET AND NARCISSE S. GARNIER, IN DEED RECORDED APRIL 11, 1947 IN BOOK 24433, PAGE 335, OF OFFICIAL RECORDS.

***END OF LEGAL DESCRIPTION***

25418

281

No. 88 Club Road Street, (If no street number, give location by direction) in the city of Pasadena, said County and State, which premises are particularly described as follows, to-wit:  Lot #6, Tract #7551 as per Map in Book 107, pages 42,43 of County Records in the office of the County Recorder of said County. That as such owner of said land, affiant, about the 26th day of March, 1946, entered into a contract with J. E. Haddock, Ltd., 3538 East Foothill Blvd., Pasadena, California, as per Permit (if any) No. 3985-J, dated March 27, 1946, for the erection and construction or work of improvement upon the land above described, of a certain building or work of improvement, to-wit:  Residence and Garage.

That said building or work of improvement has been duly constructed improved altered and the same actually completed on the twenty-ninth day of September, 1947, by J. E. Haddock, Ltd.  (If building was not completed by the original contractor, give the name of the contractor who completed the work)

The record owner in fee simple under contract of the lot at the time the construction or work of improvement was commenced and accepted by the undersigned on the same day was E. T. and Marie Harwood.

This notice is given in pursuance of the provisions of Section 1187 of the Code of Civil Procedure of this State.

                                        E. T. Harwood

                                        Marie Harwood

State of California, County of Los Angeles, ) SS.  E. T. Harwood and Marie Harwood, being duly sworn, deposes and says, that, they is are the owner of the property described in the foregoing notice; that they has read the same and knows the contents thereof, and that the same is true of their own knowledge.

                                        Marie Harwood

                                        E. T. Harwood

        Subscribed and sworn to before me this
        8 day of Oct. 1947.

                    I. Stoterau
(SEAL)              Notary Public in and for said County and State.
        (I. STOTERAU) NOTARY PUBLIC in and for the
        County of Los Angeles, State of California.
        My Commission Expires April 3, 1951.

#2255.  Recorded at request of Burton Emsberger, NOV 7, 1947, 12:21 P.M.  Copyist #106.
        Compared, Mass E. Beatty, County Recorder.
$1.80-5-M                                    By _____ Deputy.

25418-281

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

                    DECLARATION OF RESTRICTIONS

KNOW ALL MEN BY THESE PRESENTS:  That the undersigned, COMMUNITY BUILDING CO., owner and subdivider of that certain property in the City of Los Angeles, County of Los Angeles, State of California, described and known as Lots 1 to 148 inclusive, Lots 153 to 161 inclusive, Lots 162 to 177 inclusive, Lots 187 to 191 inclusive, Tract 14212, as per Map thereof recorded in Book 308, Pages 30, 31 and 32 of Maps in the office of the County Recorder of the Los Angeles County, does hereby certify and declare that he has established the following conditions, restrictions, reservations, and covenants as a general plan for the improvement and development of all of said Tract upon and subject to which all lots and/or portions of lots in said Tract shall be sold and conveyed by him as such owner.

    These covenants are to run with the land and shall be binding on all parties and all persons claiming under them until January 1, 1973, at which time said covenants shall be automatically extended for successive periods of 10 years, unless by vote of a majority of the then owners of the lots it is agreed to change said covenants in whole or in part.

    If the parties hereto, or any of them, or their heirs or assigns, shall violate or attempt to violate any of the covenants herein, it shall be lawful for any other persons owning any real property situated in said development or subdivision to prosecute any proceedings at law or in equity against the person or persons violating or attempting to violate any such covenant, and either to prevent him or them from so doing or to recover damages or other dues for such violation.

    A breach of any of the foregoing covenants or conditions, or the prosecution of any proceedings at law or in equity pertaining thereto, shall not defeat or render invalid the lien of any mortgage or deed of trust made in good faith and for value, as to said realty or any part thereof, but said covenants and/or conditions shall be binding and effective against any subsequent owner of said realty.

Invalidation of any one of these covenants by judgment or court order shall in no wise affect any of the other provisions which shall remain in full force and effect.

"A". All lots in the Tract shall be known and described as residential lots and no structures shall be erected, altered, placed or permitted to remain on any residential building plot other than one detached single-family dwelling, not to exceed three stories in height, and a private garage for not more than three (3) cars, and customary out-buildings incidental to residential use of the plot.

"B". No building shall be erected, placed or altered on any building plot in this subdivision until the building plans, specifications, and plot plan showing the location of such building have been approved in writing as to conformity and harmony of external design with existing structures in the subdivision, and as to location of the building with respect to topography and finished ground elevation, by a committee composed of Arthur B. Weber, Richard S. Diller and Irving L. Kaisman, or by a representative designated by a majority of the members of said committee. In the event of death or resignation of any member of said committee, the remaining member, or members, shall have full authority to approve or disapprove such design and location, or to designate a representative with like authority. In the event said committee, or its designated representative, fails to approve or disapprove such design and location within 30 days after said plans and specifications have been submitted to it or, in any event, if no suit to enjoin the erection of such building or the making of such alterations has been commenced prior to the completion thereof, such approval will not be required and this Covenant will be deemed to have been fully complied with. Neither the members of such committee, nor its designated representative shall be entitled to any compensation for services performed pursuant to this Covenant. The powers and duties of such committee, and of its designated representative, shall cease on and after January 1, 1951. Thereafter the approval described in this Covenant shall not be required unless, prior to said date and effective thereon, a written instrument shall be executed by the then record owners of a majority of the lots in this subdivision and duly recorded appointing a representative, or representatives, who shall thereafter exercise the same powers previously exercised by said committee.

"C". No building shall be located nearer than fifteen (15) feet to the front lot line nor nearer than five (5) feet to any side street line. No building, except a detached garage or other out-building located sixty (60) feet or more from the front lot line, shall be located nearer than five (5) feet to any side lot line. EXCEPT with specific authority of the Architectural Committee, one of the side line setbacks may be reduced to not less than three (3) feet provided that the sum of the width of the side yards is not less than ten (10) feet, and the distance between wall lines of the adjacent buildings is not less than ten (10) feet.

"D". No residential structure shall be erected or placed on any building plot, which plot has an area of less than five thousand (5000) square feet or a width of less than fifty (50) feet at the front building set-back line.

"E". No noxious or offensive trade or activity shall be carried on upon any lot nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood.

"F". No trailer, basement, tent, shack, garage, barn, or other out-building erected in the Tract shall at any time be used as a residence temporarily or permanently, nor shall any structure of a temporary character be used as a residence.

"G". The ground floor area of the main structure, exclusive of one-story open porches and garages, shall be not less than one thousand one hundred (1100) square feet in the case of a one-story structure.

"H". There is reserved a right-of-way over, across and under the rear five (5) feet of said lots for the erection, maintenance and operation of pole lines, conduits and pipe lines for the transmission of electrical energy and for telephone and telegraph lines, and for the carriage and transportation of both domestic and storm water, and for sewers and gas mains, together with the right of entry for the purpose of constructing, erecting, operating, repairing, and maintaining same.

"I". No fences shall be erected or permitted to remain between the street and the front setback lines, nor shall any hedge therein be permitted to exceed the height of three (3) feet.

25418          283

"J"   No garage shall be erected on the premises until the plans have been submitted to and approved by the Architectural Committee provided for in Paragraph "B".

"K"   No part of said realty shall ever at any time be used or occupied by any person not of the White, or Caucasian race, excepting such as are employed as bona fide domestic servants upon such realty by the owners or tenants of such realty actually residing thereon.

"L"   No derrick or other structure designed for use in boring for oil, petroleum, naptha, natural gas, asphaltum, or other kindred substances shall ever be erected, placed or maintained upon any part of said tract.

"M"   The undersigned hereby reserves the right to grade all lots in said tract to such grade as he considers necessary to conform to the general plan and grade of the entire tract, prior to the occupancy of same.

IN WITNESS WHEREOF this declaration has been executed by the party above named this 19th day of September, 1947.

(SEAL)
           COMMUNITY BUILDING CO.
           By R. S. Diller
           (R. S. Diller), President

COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ) SS.   On the 19th day of September, 1947, before me, Dixie W. Long, a Notary Public in and for the County of Los Angeles, State of California, personally appeared R. S. Diller, known to me to be the President of Community Building Co., the corporation which executed the within instrument, and whose name is subscribed thereto, and acknowledged to me that he executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal at my office in the City of Los Angeles, County of Los Angeles, State of California, the day and year in this certificate first above written.

(SEAL)
           Dixie W. Long, Notary Public in and
           for the County of Los Angeles, State
           of California.
           My Commission Expires Oct. 18, 1948.

#2163.   Recorded at request of Comm. Bldg. Co. NOV 7, 1947, 11:58 A.M.   Copyist #106.
$2.70-16-L   Compared, Mame B. Beatty, County Recorder,   By B. Tolsin (?)   Deputy.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SOUTHERN CALIFORNIA EDISON COMPANY LTD

GRANT OF EASEMENT
(INDIVIDUAL)

THE GRANTORS, PORTER L. PARMELE and CARRIE Y. PARMELE (husband and wife) hereby grant to SOUTHERN CALIFORNIA EDISON COMPANY LTD., a corporation, its successors and assigns, the right to construct, use, maintain, alter, add to, repair, replace and/or remove, in, on and over the real property hereinafter described, situated in the County of Los Angeles, State of California, an electric line, consisting of poles, necessary guys and anchors, cross-arms, wires and other fixtures and appliances, for conveying electric energy to be used for light, heat, power, telephone and/or other purposes.

Said real property is described as follows:  The southerly 5 feet of Lot 40 in Tract No. 1919 as per map recorded in Book 21, page 60 of Maps, records of said Los Angeles County.

The Grantee, its successors and assigns, and its and their agents and employees, shall have free access to said electric line and every part thereof, at all times, for the purpose of exercising the rights herein granted, and shall have the right to trim or top such trees as may endanger or interfere with said electric line.

IN WITNESS WHEREOF, the Grantors have executed this instrument this 29th day of Sept., 1947.

Witness:
           Signature of Grantor(s):

S. C. Thompson
           Porter L. Parmele
S. C. Thompson
           Carrie Y. Parmele

(Witness Form)

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES, ) SS.   On this 6th day of NOVEMBER, 1947, before me, O. W. _____ a Notary Public in and for said County and State, personally appeared S. C. THOMPSON, personally

**If this document contains any restriction based on age, race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, that restriction violates state and federal fair housing laws and is void, and may be removed pursuant to Section 12956.2 of the Government Code by submitting a "Restrictive Covenant Modification" form, together with a copy of the attached document with the unlawful provision redacted to the county recorder's office. The "Restrictive Covenant Modification" form can be obtained from the county recorder's office and may be available on its internet website. The form may also be available from the party that provided you with this document. Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.** Gov. Code Sec. 12956.1(b)(1)

Any person who believes that this document contains an unlawful restrictive covenant as described above may submit to the County Recorder a completed Restrictive Covenant Modification form.  A complete copy of the original document must be attached to the Restrictive Covenant Modification form, with the unlawful language redacted.  After submission to the Recorder, the form and attached document will be reviewed by County Counsel, and if the attached document properly redacts an unlawful covenant, the form and attached document will be recorded.  If you submit a request to record a modification document, you must provide a return address in order for the County Recorder to notify you of the action taken by the County Counsel regarding the form.  Gov. Code Sec. 12956.2(a)(1), (b)(1), (c)

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

THIS SPACE FOR RECORDER'S USE ONLY

## RESTRICTIVE COVENANT MODIFICATION

The following reference document contains a restriction based on age, race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, veteran or military status, genetic information, national origin, source of income as defined in Section 12955 of the Government Code, or ancestry, that violates state and federal fair housing laws and is void. Pursuant to Section 12956.2 of the Government Code, this document is being recorded solely for the purpose of redacting and eliminating that restrictive covenant as shown on page(s) _____ of the document recorded on _____(date) in book _____ and page _____ or instrument number _____ of the official records of the County of _____, State of California.

Attached hereto is a true, correct and complete copy of the document referenced above, with the unlawful restrictive covenant redacted.

This modification document shall be indexed in the same manner as the original document being modified, pursuant to subdivision (d) of Section 12956 of the Government Code.

The effective date of the terms and conditions of the modification document shall be the same as the effective date of the original document.

Signature of Submitting Party: _____       Date: _____

Print Name: _____

_____ County Counsel, or their designee, pursuant to paragraph (1) of subdivision (b) of Section 12956.2 of the Government Code, hereby states that it has determined that the original document referenced above contains an unlawful restriction and this modification may be recorded. Or

_____County Counsel, or their designee, pursuant to paragraph (1) of subdivision (b) of Section 12956.2 of the Government Code, finds that the original document does not contain an unlawful restriction, or the modification document contains modifications not authorized, and this modification may not be recorded.

_____
County Counsel
By:
Date:

25418

281

No. 88 Club Road Street, (If no street number, give location by direction) in the city of Pasadena, said
County and State, which premises are particularly described as follows, to-wit: Lot #6, Tract #7551
as per map in Book 107, pages 42,43 of County Records in the office of the County Recorder of said County.
That as such owner of said land, affiant, about the 26th day of March, 1946, entered into a contract with
J. E. Haddock, Ltd., 3538 East Foothill Blvd., Pasadena, California, as per Permit (if any) No. 3985-J,
dated March 27, 1946, for the erection and construction or work of improvement upon the land above describ-
ed, of a certain building or work of improvement, to-wit: Residence and Garage.
That said building or work of improvement has been duly constructed improved altered and the same actually
completed on the twenty-ninth day of September, 1947, by J. E. Haddock, Ltd. (If building was not completed
by the original contractor, give the name of the contractor who completed the work)
The record owner in fee simple under contract of the lot at the time the construction or work of improvement
was commenced and accepted by the undersigned on the same day was E. T. and Marie Harwood.
This notice is given in pursuance of the provisions of Section 1187 of the Code of Civil Procedure of this
State.

                                        E. T. Harwood

                                              Marie Harwood
State of California, County of Los Angeles, ) SS.  E. T. Harwood and Marie Harwood, being duly sworn,
deposes and says, that, they is are the owner of the property described in the foregoing notice; that they
has read the same and knows the contents thereof, and that the same is true of their own knowledge.
                                              Marie Harwood
                                        E. T. Harwood

         Subscribed and sworn to before me this
         8 day of Oct. 1947.
                    I. Stoterau
(SEAL)              Notary Public in and for said County and State.
                    (I. STOTERAU) NOTARY PUBLIC in and for the
                    County of Los Angeles, State of California.
                    My Commission Expires April 3, 1951.

#2255.  Recorded at request of Burton Homberger, NOV 7, 1947, 12:21 P.M.  Copyist #106.
         Compared, Mabe E. Beatty, County Recorder.
$1.80-5-M                                   By B. Tolman (13)          Deputy.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                              25418-281
                    DECLARATION OF RESTRICTIONS

KNOW ALL MEN BY THESE PRESENTS: That the undersigned, COMMUNITY BUILDING CO., owner and subdivider of that
certain property in the City of Los Angeles, County of Los Angeles, State of California, described and
known as Lots 1 to 148 inclusive, Lots 153 to 161 inclusive, Lots 162 to 177 inclusive, Lots 187 to 191
inclusive, Tract 14212, as per Map thereof recorded in Book 308, Pages 30, 31 and 32 of Maps in the office
of the County Recorder of the Los Angeles County, does hereby certify and declare that he has established
the following conditions, restrictions, reservations, and covenants as a general plan for the improvement
and development of all of said Tract upon and subject to which all lots and/or portions of lots in said
Tract shall be sold and conveyed by him as such owner.

    These covenants are to run with the land and shall be binding on all parties and all persons claiming
under them until January 1, 1973, at which time said covenants shall be automatically extended for succes-
sive periods of 10 years, unless by vote of a majority of the then owners of the lots it is agreed to change
said covenants in whole or in part.

    If the parties hereto, or any of them, or their heirs or assigns, shall violate or attempt to violate
any of the covenants herein, it shall be lawful for any other persons owning any real property situated in
said development or subdivision to prosecute any proceedings at law or in equity against the person or
persons violating or attempting to violate any such covenant, and either to prevent him or them from so
doing or to recover damages or other dues for such violation.

    A breach of any of the foregoing covenants or conditions, or the prosecution of any proceedings at law
or in equity pertaining thereto, shall not defeat or render invalid the lien of any mortgage or deed of
trust made in good faith and for value, as to said realty or any part thereof, but said covenants and/or
conditions shall be binding and effective against any subsequent owner of said realty.

Invalidation of any one of these covenants by judgment or court order shall in no wise affect any of the other provisions which shall remain in full force and effect.

"A". All lots in the Tract shall be known and described as residential lots and no structures shall be erected, altered, placed or permitted to remain on any residential building plot other than one detached single-family dwelling, not to exceed three stories in height, and a private garage for not more than three (3) cars, and customary out-buildings incidental to residential use of the plot.

"B". No building shall be erected, placed or altered on any building plot in this subdivision until the building plans, specifications, and plot plan showing the location of such building have been approved in writing as to conformity and harmony of external design with existing structures in the subdivision, and as to location of the building with respect to topography and finished ground elevation, by a committee composed of Arthur B. Weber, Richard S. Diller and Irving L. Kaizman, or by a representative designated by a majority of the members of said committee. In the event of death or resignation of any member of said committee, the remaining member, or members, shall have full authority to approve or disapprove such design and location, or to designate a representative with like authority. In the event said committee, or its designated representative, fails to approve or disapprove such design and location within 30 days after said plans and specifications have been submitted to it or, in any event, if no suit to enjoin the erection of such building or the making of such alterations has been commenced prior to the completion thereof, such approval will not be required and this Covenant will be deemed to have been fully complied with. Neither the members of such committee, nor its designated representative shall be entitled to any compensation for services performed pursuant to this Covenant. The powers and duties of such committee, and of its designated representative, shall cease on and after January 1, 1951. Thereafter the approval described in this Covenant shall not be required unless, prior to said date and effective thereon, a written instrument shall be executed by the then record owners of a majority of the lots in this subdivision and duly recorded appointing a representative, or representatives, who shall thereafter exercise the same powers previously exercised by said committee.

"C" No building shall be located nearer than fifteen (15) feet to the front lot line nor nearer than five (5) feet to any side street line. No building, except a detached garage or other out-building located sixty (60) feet or more from the front lot line, shall be located nearer than five (5) feet to any side lot line. EXCEPT with specific authority of the Architectural Committee, one of the side line setbacks may be reduced to not less than three (3) feet provided that the sum of the width of the side yards is not less than ten (10) feet, and the distance between wall lines of the adjacent buildings is not less than ten (10) feet.

"D" No residential structure shall be erected or placed on any building plot, which plot has an area of less than five thousand (5000) square feet or a width of less than fifty (50) feet at the front building set-back line.

"E" No noxious or offensive trade or activity shall be carried on upon any lot nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood.

"F" No trailer, basement, tent, shack, garage, barn, or other out-building erected in the Tract shall at any time be used as a residence temporarily or permanently, nor shall any structure of a temporary character be used as a residence.

"G" The ground floor area of the main structure, exclusive of one-story open porches and garages, shall be not less than one thousand one hundred (1100) square feet in the case of a one-story structure.

"H" There is reserved a right-of-way over, across and under the rear five (5) feet of said lots for the erection, maintenance and operation of pole lines, conduits and pipe lines for the transmission of electrical energy and for telephone and telegraph lines, and for the carriage and transportation of both domestic and storm water, and for sewers and gas mains, together with the right of entry for the purpose of constructing, erecting, operating, repairing, and maintaining same.

"I" No fences shall be erected or permitted to remain between the street and the front setback lines, and shall any hedge therein be permitted to exceed the height of three (3) feet.

25418          283

"J"  No garage shall be erected on the premises until the plans have been submitted to and approved by the Architectural Committee provided for in Paragraph "B".

"K"  No part of said realty shall ever at any time be used or occupied by any person not of the White, or Caucasian race, excepting such as are employed as bona fide domestic servants upon such realty by the owners or tenants of such realty actually residing thereon.

"L"  No derrick or other structure designed for use in boring for oil, petroleum, naptha, natural gas, asphaltum, or other kindred substances shall ever be erected, placed or maintained upon any part of said tract.

"M"  The undersigned hereby reserves the right to grade all lots in said tract to such grade as he considers necessary to conform to the general plan and grade of the entire tract, prior to the occupancy of same.

IN WITNESS WHEREOF this declaration has been executed by the party above named this 19th day of September, 1947.

(SEAL)
                                        COMMUNITY BUILDING CO.
                                        By R. S. Diller
                                        (R. S. Diller), President

COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ) SS.  On the 19th day of September, 1947, before me, Dixie W. Long, a Notary Public in and for the County of Los Angeles, State of California, personally appeared R. S. Diller, known to me to be the President of Community Building Co., the corporation which executed the within instrument, and whose name is subscribed thereto, and acknowledged to me that he executed same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal at my office in the City of Los Angeles, County of Los Angeles, State of California, the day and year in this certificate first above written.

(SEAL)
                                        Dixie W. Long, Notary Public in and
                                        for the County of Los Angeles, State
                                        of California.
                                        My Commission Expires Oct. 18, 1948.

#2163.  Recorded at request of Comm. Bldg. Co. NOV 7, 1947, 11:58 A.M.  Copyist #106.
$2.70-16-L        Compared, Mame B. Beatty, County Recorder, By  B. Teleen (?)           Deputy.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

SOUTHERN CALIFORNIA EDISON COMPANY LTD

                        GRANT OF EASEMENT
                           (INDIVIDUAL)

THE GRANTORS, PORTER L. PARMELE and CARRIE Y. PARMELE (husband and wife) hereby grant to SOUTHERN CALIFORNIA EDISON COMPANY LTD., a corporation, its successors and assigns, the right to construct, use, maintain, alter, add to, repair, replace and/or remove, in, on and over the real property hereinafter described, situated in the County of Los Angeles, State of California, an electric line, consisting of poles, necessary guys and anchors, cross-arms, wires and other fixtures and appliances, for conveying electric energy to be used for light, heat, power, telephone and/or other purposes.

Said real property is described as follows:  The southerly 5 feet of Lot 40 in Tract No. 1919 as per map recorded in Book 21, page 60 of Maps, records of said Los Angeles County.

The Grantee, its successors and assigns, and its and their agents and employees, shall have free access to said electric line and every part thereof, at all times, for the purpose of exercising the rights herein granted, and shall have the right to trim or top such trees as may endanger or interfere with said electric line.

IN WITNESS WHEREOF, the Grantors have executed this instrument this 29th day of Sept., 1947.

                                        Signature of Grantor(s):
Witness:
S. C. Thompson                          Porter L. Parmele

S. C. Thompson                          Carrie Y. Parmele

                        (Witness Form)

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES, ) SS.  On this 6th day of NOVEMBER, 1947, before me, O. W. _____ a Notary Public in and for said County and State, personally appeared S. C. THOMPSON, personally

If this document contains any restriction based on age, race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, that restriction violates state and federal fair housing laws and is void, and may be removed pursuant to Section 12956.2 of the Government Code by submitting a "Restrictive Covenant Modification" form, together with a copy of the attached document with the unlawful provision redacted to the county recorder's office. The "Restrictive Covenant Modification" form can be obtained from the county recorder's office and may be available on its internet website. The form may also be available from the party that provided you with this document. Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status. Gov. Code Sec. 12956.1(b)(1)

Any person who believes that this document contains an unlawful restrictive covenant as described above may submit to the County Recorder a completed Restrictive Covenant Modification form. A complete copy of the original document must be attached to the Restrictive Covenant Modification form, with the unlawful language redacted. After submission to the Recorder, the form and attached document will be reviewed by County Counsel, and if the attached document properly redacts an unlawful covenant, the form and attached document will be recorded. If you submit a request to record a modification document, you must provide a return address in order for the County Recorder to notify you of the action taken by the County Counsel regarding the form. Gov. Code Sec. 12956.2(a)(1), (b)(1), (c)

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

THIS SPACE FOR RECORDER'S USE ONLY

## RESTRICTIVE COVENANT MODIFICATION

The following reference document contains a restriction based on age, race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, veteran or military status, genetic information, national origin, source of income as defined in Section 12955 of the Government Code, or ancestry, that violates state and federal fair housing laws and is void. Pursuant to Section 12956.2 of the Government Code, this document is being recorded solely for the purpose of redacting and eliminating that restrictive covenant as shown on page(s) ____ of the document recorded on _____ (date) in book _____ and page _____ or instrument number _____ of the official records of the County of _____, State of California.

Attached hereto is a true, correct and complete copy of the document referenced above, with the unlawful restrictive covenant redacted.

This modification document shall be indexed in the same manner as the original document being modified, pursuant to subdivision (d) of Section 12956 of the Government Code.

The effective date of the terms and conditions of the modification document shall be the same as the effective date of the original document.

Signature of Submitting Party: _____          Date: _____

Print Name: _____

_____ County Counsel, or their designee, pursuant to paragraph (1) of subdivision (b) of Section 12956.2 of the Government Code, hereby states that it has determined that the original document referenced above contains an unlawful restriction and this modification may be recorded.
Or
_____County Counsel, or their designee, pursuant to paragraph (1) of subdivision (b) of Section 12956.2 of the Government Code, finds that the original document does not contain an unlawful restriction, or the modification document contains modifications not authorized, and this modification may not be recorded.

_____
County Counsel
By:
Date:

▲                **This page is part of your document - DO NOT DISCARD**                ▲

**05 0839314**

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA

8:21 AM   APR  12 2005

## TITLE(S) :

▲



L E A D     S H E E T

▲

**FEE**                                                    D.T.T.

FEE $ 28 —D
DAF $ 2
C-20        8

**CODE
20**

**CODE
19**

**CODE
9____**

NOTIFICATION SENT-$4 ◎

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**        **Number of AIN's Shown**

▲                **THIS FORM IS NOT TO BE DUPLICATED**                ▲

**05  0839314**    2

**When Recorded Mail to:**
Attn:  Recording Department
Optima Information Solutions
1700 Carnegie Ave. Ste #200
Santa Ana, CA 92705

**CSSG**

| | Document Title | |
|---|---|---|
| APN:<br>4301-001-032 | **DEED OF TRUST** | 18100505434 |

**PLEASE DO NOT REMOVE THIS COVER PAGE.**
**THIS IS PART OF THE DOCUMENT.**

This document was prepared by Jessica Hendrix,
Charles Schwab Bank, N.A. 

3

**When Recorded Mail to:**
Optima Information Solutions
1700 Carnegie Avenue, Suite 200
Santa Ana, CA 92705
CSSG

─── State of California ───

Space Above This Line For Recording Data

1810050543H

# DEED OF TRUST
(With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is March 17, 2005
and the parties, their addresses and tax identification numbers, if required, are as follows:
   GRANTOR: Carmen A. Rissman, A MARRIED PERSON
   Stuart E. Rissman, A MARRIED PERSON
   2803 SOUTH CANFIELD AVENUE LOS ANGELES, CA 90034

   ☐ If checked, refer to the attached Addendum incorporated herein, for additional Grantors, their signatures and acknowledgments.
   TRUSTEE:
   First American Title
   1 First American Way, Santa Ana, CA 92707

   LENDER:
   Charles Schwab Bank, N.A.
   5190 Neil Road, Suite 300 Reno, NV 89502

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described property:
   See Attached

   The property is located in ─── LOS ANGELES ─── at 2803 SOUTH CANFIELD ───
   _____(County)_____

   AVENUE ─────────────────── LOS ANGELES ──────, California ─── 90034 ──
   _____(Address)_____(City)_____(ZIP Code)

   Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ 100,000.00 ____. This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(s) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. (*Include items such as borrowers' names, note or contract amounts, interest rates (whether variable), maturity dates, etc.*)
   As indicated in the home equity line agreement dated 3/17/05, with a maturity date of 3/17/35.

   **05 0839314**

**CALIFORNIA - HOME EQUITY LINE OF CREDIT DEED OF TRUST** (NOT FOR FNMA, FHLMC, FHA OR VA USE)
Express © 1994 Bankers Systems, Inc., St Cloud, MN Form OCP-REDT-CA 9/13/2001
VMP-C465(CA) (0112).01                    VMP MORTGAGE FORMS - (800)521-7291

(page 1 of 6)
C&R

B. All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract or guaranty, or other evidence of debt executed by Grantor in favor of Lender after this Security Instrument if this Security Instrument is specifically referenced on the evidence of other debt. If more than one person signs this Security Instrument, each Grantor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Grantor, or any one or more Grantor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument.

C. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

D. Performance of every obligation in this Security Instrument (including any subsequent instrument amending this Security Instrument) and any instrument now or later evidencing or securing any indebtedness secured by this Security Instrument.

In the event that Lender fails to provide any necessary notice of the right of rescission with respect to any additional indebtedness secured under paragraph B of this Section, Lender waives any subsequent security interest in the Grantor's principal dwelling that is created by this Security Instrument (but does not waive the security interest for the debts referenced in paragraph A of this Section.)

5. **DEED OF TRUST COVENANTS.** Grantor agrees that the covenants in this section are material obligations under the Secured Debt and this Security Instrument. If Grantor breaches any covenant in this section, Lender may refuse to make additional extensions of credit and reduce the credit limit. By not exercising either remedy on Grantor's breach, Lender does not waive Lender's right to later consider the event a breach if it happens again.

**Payments.** Grantor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

**Prior Security Interests.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees to make all payments when due and to perform or comply with all covenants. Grantor also agrees not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written approval.

**Claims Against Title.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

**Property Condition, Alterations and Inspection.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor shall not commit or allow any waste, impairment, or deterioration of the Property. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

**Authority to Perform.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument.

05 0839314

**Leaseholds; Condominiums; Planned Unit Developments.** Grantor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**Condemnation.** Grantor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**Insurance.** Grantor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. These requirements may change during the life of this Security Instrument. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Grantor. If the Property is acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

**Financial Reports and Additional Documents.** Grantor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and Lender's lien status on the Property.

6.  **WARRANTY OF TITLE.** Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

7.  **DUE ON SALE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

8.  **DEFAULT.** Grantor will be in default if any of the following occur:

    **Fraud.** Any Consumer Borrower engages in fraud or material misrepresentation in connection with the Secured Debt that is an open end home equity plan.
    **Payments.** Any Consumer Borrower on any Secured Debt that is an open end home equity plan fails to make a payment when due.
    **Property.** Any action or inaction by the Borrower or Grantor occurs that adversely affects the Property or Lender's rights in the Property. This includes, but is not limited to, the following: (a) Grantor fails to maintain required insurance on the Property; (b) Grantor transfers the Property; (c) Grantor commits waste or otherwise destructively uses or fails to maintain the Property such that the action or inaction adversely affects Lender's security; (d) Grantor fails to pay taxes on the Property or otherwise fails to act and thereby causes a lien to be filed against the Property that is senior to the lien of this Security Instrument; (e) a sole Grantor dies; (f) if more than one Grantor, any Grantor dies and Lender's security is adversely affected; (g) the Property is taken through eminent domain; (h) a judgment is filed against Grantor and subjects Grantor and the Property to action that adversely affects Lender's interest; or (i) a prior lienholder forecloses on the Property and as a result, Lender's interest is adversely affected.

    **Executive Officers.** Any Borrower is an executive officer of Lender or an affiliate and such Borrower becomes indebted to Lender or another lender in an aggregate amount greater than the amount permitted under federal laws and regulations.

9. **REMEDIES ON DEFAULT.** In addition to any other remedy available under the terms of this Security Instrument, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Grantor is in default. In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions.

At the option of the Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. Lender shall be entitled to, without limitation, the power to sell the Property.

If Lender elects to foreclose by exercise of the power of sale, Lender will declare the entire Secured Debts due and payable by delivering to Trustee this Security Instrument and any evidence of the Secured Debts, receipts and evidence of expenditures made and secured, as Trustee requires. When the legally prescribed time passes after Trustee or Lender duly records a notice of default, the Trustee, Lender or other person authorized to take the sale will give a notice of sale as required by law and will cause the Property to be sold at the time and place fixed in the notice of sale. Lender may rescind any notice of default at any time before the Property's sale. Rescission will occur when Lender executes and records a notice of rescission that cancels any prior notice of default and any related acceleration of the Secured Debts. Lender's rescission will not waive any default then existing or subsequently occurring or preclude Lender exercising its remedies, including the power of sale, at another time.

The Property can be sold as a whole or in separate parcels and in any order that Trustee decides. The Property will be sold to the highest bidder for cash in lawful money of the United States, payable at sale time. The Property can be sold to anyone, including Grantor, Trustee or Lender. Trustee may postpone the sale of any part of the Property by public announcement at the time and place of this sale and afterwards at the time fixed by the preceding postponement. Upon any sale of the Property, Trustee will make and deliver a special or limited warranty deed that conveys the property sold to the purchaser or purchasers. Under this special or limited warranty deed, Trustee will covenant that Trustee has not caused or allowed a lien or an encumbrance to burden the Property and that Trustee will specially warrant and defend the Property's title to the purchaser or purchasers at the sale against all lawful claims and demand of all persons claiming by, through or under Trustee. The deed's recital of facts will be conclusive proof of the truthfulness of these facts.

The proceeds from the Property's sale will be applied to the sale expenses, Trustee's expenses, Lender's attorneys' fees due on Grantor's default, sums that Trustee or Lender paid for procuring a title search of the Property's title subsequent to the execution of this Security Instrument, all outstanding amounts due under this Security Instrument and the remainder to anyone legally entitled to the remaining amounts due.

The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it happens again.

10. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** If Grantor breaches any covenant in this Security Instrument, Grantor agrees to pay all expenses Lender incurs in performing such covenants (including but not limited to advances and expenses described in the DEED OF TRUST COVENANTS section) or protecting its security interest in the Property. Such expenses include, but are not limited to, fees incurred for inspecting, preserving, or otherwise protecting the Property and Lender's security interest. These expenses are payable on demand and will bear interest from the date of payment until paid in full at the highest rate of interest in effect as provided in the terms of the Secured Debt. Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. To the extent permitted by the United States Bankruptcy Code, Grantor agrees to pay the reasonable attorneys' fees Lender incurs to collect the Secured Debt as awarded by any court exercising jurisdiction under the Bankruptcy Code. This Security Instrument shall remain in effect until released. Grantor agrees to pay for any recordation costs of such release.

11. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Grantor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

B. Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

C. Grantor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Grantor shall take all necessary remedial action in accordance with any Environmental Law.

D. Grantor shall immediately notify Lender in writing as soon as Grantor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

12. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

13. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to mortgage Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Grantor and Lender.

14. **SEVERABILITY; INTERPRETATION.** This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

15. **SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

16. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one grantor will be deemed to be notice to all grantors. Lender and Grantor request that copies of any notice of default or notice of sale under a superior security instrument be sent to Lender and Grantor at the addresses listed in DATE AND PARTIES section.

17. **WAIVERS.** Except to the extent prohibited by law, Grantor waives all appraisement or marshalling of assets relating to the Property.

18. **SPOUSE'S SEPARATE PROPERTY.** Any Grantor who is a married person expressly agrees that recourse may be had against his or her separate property.

19. **LINE OF CREDIT.** The Secured Debt includes a revolving line of credit. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

20. **APPLICABLE LAW.** This Security Instrument is governed by the laws as agreed to in the Secured Debt, except to the extent required by the laws of the jurisdiction where the Property is located, and applicable federal laws and regulations.

Experts © 1994 Bankers Systems, Inc., St Cloud, MN Form OCP-REDT-CA 9/13/2001
-C465(CA) (0112) 01

*(page 5 of 6)*



05 0839314

21. **RIDERS.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]
☐ Assignment of Leases and Rents    ☐ Other _____

22. ☐ **ADDITIONAL TERMS.**

23. **REQUEST FOR NOTICE.** In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded in book _____ , in book _____ page _____ , records of LOS ANGELES _____ County, (or filed for record with recorder's serial number _____ , LOS ANGELES _____ County) California, executed by CARMEN A. RISSMAN _____ as trustor (or mortgagor) in which INDYMAC-HLS _____ , is named as beneficiary (or mortgagee) and _____ as trustee be mailed to: Name Charles Schwab Bank, N.A. _____ at Address 5190 Neil Road, Suite 300 Reno, NV 89502 _____

NOTICE: A copy of any notice of default and of any notice of sale will be sent only to the address contained in this recorded request. If your address changes, a new request must be recorded.
(Include the requester's name, by the signer, among those acknowledging below, or use a separate acknowledgment form.)

Signature on behalf of the requester named above:

Signature *Carmen A. Rissman*

**SIGNATURES:** By signing below, Grantor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Grantor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

*Carmen A. Rissman*  3/17/05          *Stuart E. Rissman*  3/17/05
(Signature) Carmen A. Rissman    (Date)          (Signature) Stuart E. Rissman    (Date)

**ACKNOWLEDGMENT:**

STATE OF CA _____ , COUNTY OF LOS ANGELES _____ }ss.
On this 17th day of March 2005 before me L. Sibley a notary public, personally appeared Carmen A. Rissman, Stuart E. Rissman _____

_____

~~personally known to me (or~~ proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that ~~he/she~~/they executed the same in ~~his/her~~/their authorized capacity(ies), and that by ~~his/her~~/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____
Name (typed or printed) L. Sibley
My commission expires: December 24, 2008 _____

L. SIBLEY
Commission # 1538030
Notary Public - California
Los Angeles County
My Comm. Expires Dec 24, 2008

**REQUEST FOR FULL RECONVEYANCE**

To Trustee: The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of the Recorder of _____ County, State of California, in book _____ page _____ of official records. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.
Dated: _____

Assessor's Identification Number _____ - _____ - _____

Experis © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CA 9/13/2001
VMP ®-C465(CA) (0112) 01

*(page 6 of 6)*

05 0839314

9

## LEGAL DESCRIPTION

THE FOLLOWING DESCRIBED PROPERTY LOCATED IN THE
COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, DESCRIBED AS
FOLLOWS:

LOT 135 OF TRACT NO. 14212, IN THE CITY OF LOS ANGELES,
COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP
RECORDED IN BOOK 308, PAGE(S) 30 TO 32, INCLUSIVE OF MAPS, IN
THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

05 0839314

If this document contains any restriction based on age, race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, that restriction violates state and federal fair housing laws and is void, and may be removed pursuant to Section 12956.2 of the Government Code by submitting a "Restrictive Covenant Modification" form, together with a copy of the attached document with the unlawful provision redacted to the county recorder's office. The "Restrictive Covenant Modification" form can be obtained from the county recorder's office and may be available on its internet website. The form may also be available from the party that provided you with this document. Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status. Gov. Code Sec. 12956.1(b)(1)

Any person who believes that this document contains an unlawful restrictive covenant as described above may submit to the County Recorder a completed Restrictive Covenant Modification form. A complete copy of the original document must be attached to the Restrictive Covenant Modification form, with the unlawful language redacted. After submission to the Recorder, the form and attached document will be reviewed by County Counsel, and if the attached document properly redacts an unlawful covenant, the form and attached document will be recorded. If you submit a request to record a modification document, you must provide a return address in order for the County Recorder to notify you of the action taken by the County Counsel regarding the form. Gov. Code Sec. 12956.2(a)(1), (b)(1), (c)

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

THIS SPACE FOR RECORDER'S USE ONLY

## RESTRICTIVE COVENANT MODIFICATION

The following reference document contains a restriction based on age, race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, veteran or military status, genetic information, national origin, source of income as defined in Section 12955 of the Government Code, or ancestry, that violates state and federal fair housing laws and is void. Pursuant to Section 12956.2 of the Government Code, this document is being recorded solely for the purpose of redacting and eliminating that restrictive covenant as shown on page(s) ____ of the document recorded on _____ (date) in book _____ and page _____ or instrument number _____ of the official records of the County of _____, State of California.

Attached hereto is a true, correct and complete copy of the document referenced above, with the unlawful restrictive covenant redacted.

This modification document shall be indexed in the same manner as the original document being modified, pursuant to subdivision (d) of Section 12956 of the Government Code.

The effective date of the terms and conditions of the modification document shall be the same as the effective date of the original document.

Signature of Submitting Party: _____        Date: _____

Print Name: _____

_____ County Counsel, or their designee, pursuant to paragraph (1) of subdivision (b) of Section 12956.2 of the Government Code, hereby states that it has determined that the original document referenced above contains an unlawful restriction and this modification may be recorded.
Or
_____County Counsel, or their designee, pursuant to paragraph (1) of subdivision (b) of Section 12956.2 of the Government Code, finds that the original document does not contain an unlawful restriction, or the modification document contains modifications not authorized, and this modification may not be recorded.

_____
County Counsel
By:
Date:

**This page is part of your document - DO NOT DISCARD**



## 20121236564



**Pages:**
**0017**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**08/20/12 AT 08:00AM**

| | |
|---|---|
| FEES: | 67.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 67.00 |



**L E A D S H E E T**



201208200130004

**00006297421**



004217728

**SEQ:**
**19**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

t33

08/20/2012

*20121236564*

After Recording Return To:
GREENLIGHT FINANCIAL SERVICES
ATTN: FINAL DOCUMENT DEPARTMENT
18200 VON KARMAN AVE #300
IRVINE, CA 92612

Title Order No.: 14629413

LOAN #: 0134014836
————————————————————— [Space Above This Line For Recording Data] ——————————————————————

## DEED OF TRUST

MIN 1001460-0134014837-9

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
**(A) "Security Instrument"** means this document, which is dated **AUGUST 9, 2012,**                together with all Riders to this document.
**(B) "Borrower"** is STUART E. RISSMAN AND CARMEN A. RISSMAN, HUSBAND AND WIFE, AS TRUSTEES OF THE RISSMAN FAMILY TRUST, UNDER TRUST AGREEMENT DATED NOVEMBER 24, 1999.

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is GREENLIGHT FINANCIAL SERVICES.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01
© 1999-2009 Online Documents, Inc          **Page  1  of 12**          CAEDEED          CAEDEDL  0908



3

LOAN #: 0134014836
Lender is a **CORPORATION**                          organized and existing under the laws of
**CALIFORNIA.**                          Lender's address is **18200 VON KARMAN AVE**
**#300, IRVINE, CA 92612.**

**(D) "Trustee"** is **LSI TITLE COMPANY.**

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated  **AUGUST 9, 2012.**                The Note states that Borrower owes Lender ******************* **ONE HUNDRED NINETY FIVE THOUSAND AND NO/100** *********************************************************** Dollars (U.S.   **$195,000.00**   ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  **SEPTEMBER 1, 2027.**
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I)  "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ Other(s) [specify] **INTER** |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | **VIVOS TRUST RIDER, INTER** |
| ☐ V.A. Rider | | **VIVOS REVOCABLE TRUST AS** |
| | | **BORROWER-ACK** |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

CALIFORNIA–Single Family–Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT** Form 3005 1/01
© 1999-2009 Online Documents, Inc.                    **Page   2   of  12**                    CAEDEDL  0908



4

LOAN #: 0134014836

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY                                [Type of Recording Jurisdiction] of LOS ANGELES

[Name of Recording Jurisdiction]:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".

APN #: 4301-001-032

See exhibit "A" legal description

which currently has the address of 2803 SOUTH CANFIELD AVENUE, LOS ANGELES,

[Street] [City]

California 90034        ("Property Address"):

[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01

© 1999-2009 Online Documents, Inc.            **Page   3   of  12**                        CAEDEDL  0908



LOAN #: 0134014836

may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

   2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

   If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

   Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

   3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

   Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

   The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower



*b*

LOAN #: 0134014836

any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01

© 1999-2009 Online Documents, Inc.                    **Page  5  of  12**                           CAEDEDL  0908



7

**LOAN #: 0134014836**

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect



6

**LOAN #: 0134014836**

its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01
© 1999-2009 Online Documents, Inc.                                   **Page   7   of   12**                                          CAEDEDL   0908



9

LOAN #: 0134014836

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01

© 1999-2009 Online Documents, Inc.          **Page 8 of 12**                              CAEDEDL 0908



10

LOAN #: 0134014836

agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay



LOAN #: 0134014836

all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b ) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and
radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01
© 1999-2009 Online Documents, Inc.                    **Page    10  of  12**                    CAEDEDL  0908



LOAN #: 0134014836

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01

© 1999-2009 Online Documents, Inc.                    **Page   11  of  12**                              CAEDEDL  0908



13

LOAN #: 0134014836

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (seal)
STUART E RISSMAN-BORROWER

STUART E RISSMAN, TRUSTEE OF THE RISSMAN FAMILY TRUST UNDER TRUST INSTRUMENT DATED NOVEMBER 24, 1999, FOR THE BENEFIT OF STUART E. RISSMAN AND CARMEN A. RISSMAN.

_____ (seal)
CARMEN A RISSMAN-BORROWER

CARMEN A RISSMAN, TRUSTEE OF THE RISSMAN FAMILY TRUST UNDER TRUST INSTRUMENT DATED NOVEMBER 24, 1999, FOR THE BENEFIT OF STUART E. RISSMAN AND CARMEN A. RISSMAN.

State of: *California*
County of: *Los Angeles*

On *August 09, 2012* before me, *Mariela De Leon, notary public* (here insert name and title of the officer), personally appeared STUART E RISSMAN AND CARMEN A RISSMAN, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

```
MARIELA DE LEON
Commission # 1952774
Notary Public - California
Los Angeles County
My Comm. Expires Sep 18, 2015
```

(SEAL)



14

LOAN #: 0134014836

## INTER VIVOS REVOCABLE TRUST RIDER

**DEFINITIONS USED IN THIS RIDER**
(A) "Revocable Trust" means The RISSMAN FAMILY TRUST

created under trust instrument dated NOVEMBER 24, 1999          for the benefit of
STUART E. RISSMAN AND CARMEN A. RISSMAN

(B) "Revocable Trust Trustee(s)" means STUART E RISSMAN AND CARMEN A
RISSMAN

trustee(s) of the Revocable Trust.
(C) "Revocable Trust Settlor(s)" means    STUART E RISSMAN AND CARMEN A RISSMAN

settlor(s) of the Revocable Trust.
(D) "Lender" means GREENLIGHT FINANCIAL SERVICES, A CORPORATION

(E) "Security Instrument" means the Deed of Trust, Mortgage, or Security Deed, and any riders thereto of the same date as this Rider given to secure the Note to the Lender of the same date and covering the Property (as defined below).
(F) "Property" means the property described in the Security Instrument and located at: 2803 SOUTH CANFIELD AVENUE
LOS ANGELES, CA 90034

THIS INTER VIVOS REVOCABLE TRUST RIDER is made this    9TH         day
of  AUGUST, 2012          and is incorporated into and shall be deemed to amend and supplement the Security Instrument.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, the Revocable Trust Trustee(s), the Revocable Trust Settlor(s) and the Lender further covenant and agree as follows:

©2007 Online Documents, Inc.          **Page  1  of  2**          GIVTRLU 0712



15

LOAN #: 0134014836

## A. ADDITIONAL BORROWER(S)

The term "Borrower" when used in the Security Instrument shall refer to the Revocable Trust Trustee(s), the Revocable Trust Settlor(s), and the Revocable Trust, jointly and severally. Each party signing this Rider below (whether by accepting and agreeing to the terms and covenants contained herein and agreeing to be bound thereby, or both) covenants and agrees that, whether or not such party is named as "Borrower" on the first page of the Security Instrument, each covenant and agreement and undertaking of the "Borrower" in the Security Instrument shall be such party's covenant and agreement and undertaking as "Borrower" and shall be enforceable by the Lender as if such party were named as "Borrower" in the Security Instrument.

BY SIGNING BELOW, the Revocable Trust Trustee(s) accepts and agrees to the terms and covenants contained in this Inter Vivos Revocable Trust Rider.

_____ (seal)
STUART E RISSMAN-BORROWER

STUART E RISSMAN, TRUSTEE OF THE RISSMAN FAMILY TRUST UNDER TRUST INSTRUMENT DATED NOVEMBER 24, 1999, FOR THE BENEFIT OF STUART E. RISSMAN AND CARMEN A. RISSMAN.

_____ (seal)
CARMEN A RISSMAN-BORROWER

CARMEN A RISSMAN, TRUSTEE OF THE RISSMAN FAMILY TRUST UNDER TRUST INSTRUMENT DATED NOVEMBER 24, 1999, FOR THE BENEFIT OF STUART E. RISSMAN AND CARMEN A. RISSMAN.

©2007 Online Documents, Inc.        **Page  2  of  2**        GIVTRLU  0712



16

LOAN #: 0134014836

## INTER VIVOS REVOCABLE TRUST AS
## BORROWER-ACKNOWLEDGMENT

BY SIGNING BELOW, the undersigned, Settlor(s)/Grantor(s)/Trustor(s) of THE
RISSMAN FAMILY TRUST

under trust instrument dated NOVEMBER 24, 1999            for the benefit of
STUART E. RISSMAN AND CARMEN A. RISSMAN

acknowledges all of the terms and covenants contained in this Security Instrument and
any rider(s) thereto and agrees to be bound thereby.

_____ (Seal)
STUART E RISSMAN -- TRUST SETTLOR

_____ (Seal)
CARMEN A RISSMAN -- TRUST SETTLOR

© 2007 Online Documents, Inc.                    GIVACK        GIVACJ 0711



Order ID: 14629413

17

Loan #      :  0134014836

## Exhibit A

LEGAL DESCRIPTION

The following described property:

Lot 135 of Tract No. 14212, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 308, Page(s) 30 to 32 inclusive of Maps, in the Office of the County Recorder of said County.

Assessor's Parcel No:      4301-001-032

ALTA Commitment - 2006

If this document contains any restriction based on age, race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, that restriction violates state and federal fair housing laws and is void, and may be removed pursuant to Section 12956.2 of the Government Code by submitting a "Restrictive Covenant Modification" form, together with a copy of the attached document with the unlawful provision redacted to the county recorder's office. The "Restrictive Covenant Modification" form can be obtained from the county recorder's office and may be available on its internet website. The form may also be available from the party that provided you with this document. Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status. Gov. Code Sec. 12956.1(b)(1)

Any person who believes that this document contains an unlawful restrictive covenant as described above may submit to the County Recorder a completed Restrictive Covenant Modification form. A complete copy of the original document must be attached to the Restrictive Covenant Modification form, with the unlawful language redacted. After submission to the Recorder, the form and attached document will be reviewed by County Counsel, and if the attached document properly redacts an unlawful covenant, the form and attached document will be recorded. If you submit a request to record a modification document, you must provide a return address in order for the County Recorder to notify you of the action taken by the County Counsel regarding the form. Gov. Code Sec. 12956.2(a)(1), (b)(1), (c)

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

THIS SPACE FOR RECORDER'S USE ONLY

## RESTRICTIVE COVENANT MODIFICATION

The following reference document contains a restriction based on age, race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, veteran or military status, genetic information, national origin, source of income as defined in Section 12955 of the Government Code, or ancestry, that violates state and federal fair housing laws and is void. Pursuant to Section 12956.2 of the Government Code, this document is being recorded solely for the purpose of redacting and eliminating that restrictive covenant as shown on page(s) ____ of the document recorded on _____ (date) in book _____ and page _____ or instrument number _____ of the official records of the County of _____, State of California.

Attached hereto is a true, correct and complete copy of the document referenced above, with the unlawful restrictive covenant redacted.

This modification document shall be indexed in the same manner as the original document being modified, pursuant to subdivision (d) of Section 12956 of the Government Code.

The effective date of the terms and conditions of the modification document shall be the same as the effective date of the original document.

Signature of Submitting Party: _____        Date: _____

Print Name: _____

_____ County Counsel, or their designee, pursuant to paragraph (1) of subdivision (b) of Section 12956.2 of the Government Code, hereby states that it has determined that the original document referenced above contains an unlawful restriction and this modification may be recorded.
Or
_____ County Counsel, or their designee, pursuant to paragraph (1) of subdivision (b) of Section 12956.2 of the Government Code, finds that the original document does not contain an unlawful restriction, or the modification document contains modifications not authorized, and this modification may not be recorded.

_____
County Counsel
By:
Date:

 

**This page is part of your document - DO NOT DISCARD**

# 20211602194





**Pages:**
**0002**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**10/25/21 AT 02:47PM**

| | |
|---|---|
| FEES: | 40.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 150.00 |
| PAID: | 190.00 |





**L E A D S H E E T**



201110251130077

**00021400451**



012814569

**SEQ:**
**01**

**SECURE - Daily - Priority**



**THIS FORM IS NOT TO BE DUPLICATED**

*E465752*

 

428449944

[REQUESTED BY]
NATIONWIDE TITLE CLEARING, INC.
[WHEN RECORDED MAIL TO]
Arvest Central Mortgage Company
C/O Nationwide Title Clearing,
Inc. 2100 Alt. 19 North
Palm Harbor, FL 34683

Loan Number 5773442178

## SUBSTITUTION OF TRUSTEE and FULL RECONVEYANCE

The undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR GREENLIGHT FINANCIAL SERVICES, ITS SUCCESSORS AND ASSIGNS,** as the current beneficiary of that certain Deed of Trust executed by **STUART E. RISSMAN AND CARMEN A. RISSMAN, HUSBAND AND WIFE, AS TRUSTEES OF THE RISSMAN FAMILY TRUST, UNDER TRUST AGREEMENT DATED NOVEMBER 24, 1999** (Trustor), and recorded 08/20/2012 in the Office of the Recorder of **LOS ANGELES** County, State of **California**, **Instrument # 20121236564**, of Official Records, does in accordance with the provisions of said Deed of Trust hereby substitute **NATIONWIDE TITLE CLEARING, INC.** as Trustee in place and stead of the Trustee therein, and does hereby vest NATIONWIDE TITLE CLEARING, INC. as substituted Trustee with all rights, title, estate, power, duty and trusts conferred by said Deed of Trust;

**Dated this 20th day of October in the year 2021**
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR GREENLIGHT FINANCIAL SERVICES, ITS SUCCESSORS AND ASSIGNS**



**TRACY ROGERS**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

WHEREAS the current beneficiary having represented to the Trustee that the obligation secured by said Deed of Trust has been fully paid and/or satisfied,

NOW THEREFORE, **NATIONWIDE TITLE CLEARING, INC.,** as substituted Trustee, DOES HEREBY GRANT AND RECONVEY unto the parties entitled thereto, without warranty, all the estate and interest granted to said Trustee under said Deed of Trust in the lands therein described, situated in the County of LOS ANGELES, State of California. Reference being hereby made specifically to said Deed of Trust and the record thereof for a particular description of said lands.

**NATIONWIDE TITLE CLEARING, INC.**



**SHANNON MCKINNEY**

**VICE PRESIDENT**                    **as Trustee**

STATE OF FLORIDA   COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization this 20th day of October in the year 2021, by **Tracy Rogers** and **Shannon McKinney** as VICE PRESIDENT and   VICE PRESIDENT , respectively, on behalf of their respective entities, who, as such VICE PRESIDENT and  VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. They are personally known to me.

**AARON BURDICK**
**COMM EXPIRES: 11/22/2024**

> AARON BURDICK
> Notary Public - State of Florida
> Commission # HH 066179
> My Comm. Expires Nov 22, 2024
> Bonded through National Notary Assn.

**Document Prepared By:  Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**
CMCRC 428449944  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)    MIN 100146001340148379
MERS PHONE 1-888-679-6377 MERS Mailing Address: P.O. Box 2026, Flint, MI 48501-2026  DOCR T202110-11:09:54 [C-1]
ERCNCA61

*D0086034707*

If this document contains any restriction based on age, race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, that restriction violates state and federal fair housing laws and is void, and may be removed pursuant to Section 12956.2 of the Government Code by submitting a "Restrictive Covenant Modification" form, together with a copy of the attached document with the unlawful provision redacted to the county recorder's office. The "Restrictive Covenant Modification" form can be obtained from the county recorder's office and may be available on its internet website. The form may also be available from the party that provided you with this document. Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status. Gov. Code Sec. 12956.1(b)(1)

Any person who believes that this document contains an unlawful restrictive covenant as described above may submit to the County Recorder a completed Restrictive Covenant Modification form. A complete copy of the original document must be attached to the Restrictive Covenant Modification form, with the unlawful language redacted. After submission to the Recorder, the form and attached document will be reviewed by County Counsel, and if the attached document properly redacts an unlawful covenant, the form and attached document will be recorded. If you submit a request to record a modification document, you must provide a return address in order for the County Recorder to notify you of the action taken by the County Counsel regarding the form. Gov. Code Sec. 12956.2(a)(1), (b)(1), (c)

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

THIS SPACE FOR RECORDER'S USE ONLY

## RESTRICTIVE COVENANT MODIFICATION

The following reference document contains a restriction based on age, race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, veteran or military status, genetic information, national origin, source of income as defined in Section 12955 of the Government Code, or ancestry, that violates state and federal fair housing laws and is void. Pursuant to Section 12956.2 of the Government Code, this document is being recorded solely for the purpose of redacting and eliminating that restrictive covenant as shown on page(s) _____ of the document recorded on _____(date) in book _____ and page _____ or instrument number _____ of the official records of the County of _____, State of California.

Attached hereto is a true, correct and complete copy of the document referenced above, with the unlawful restrictive covenant redacted.

This modification document shall be indexed in the same manner as the original document being modified, pursuant to subdivision (d) of Section 12956 of the Government Code.

The effective date of the terms and conditions of the modification document shall be the same as the effective date of the original document.

Signature of Submitting Party: _____    Date: _____

Print Name: _____


_____ County Counsel, or their designee, pursuant to paragraph (1) of subdivision (b) of Section 12956.2 of the Government Code, hereby states that it has determined that the original document referenced above contains an unlawful restriction and this modification may be recorded.
Or
_____County Counsel, or their designee, pursuant to paragraph (1) of subdivision (b) of Section 12956.2 of the Government Code, finds that the original document does not contain an unlawful restriction, or the modification document contains modifications not authorized, and this modification may not be recorded.


_____
County Counsel
By:
Date:

 **This page is part of your document - DO NOT DISCARD** 

## 20211897384

 

**Pages:**
**0014**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**12/22/21 AT 08:00AM**

| | |
|---|---|
| FEES: | 63.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 138.00 |





**L E A D S H E E T**



202112220170050

00021721417



013007911

**SEQ:**
**01**

SECURE - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**     221257166

E441953

RECORDING REQUESTED BY
LAWYERS TITLE

**Recording Requested By:**
**Sprout Mortgage, LLC, A Limited Liability**
**Company**

**After Recording Return To:**
**Sprout Mortgage, LLC**
**90 Merrick Ave**
**Suite #430**
**East Meadow, NY 11554**

**Prepared By:**
**Sprout Mortgage, LLC**
**1680 SW. St. Lucie West Blvd.**
**Suite 208**
**Port Saint Lucie, FL 34986**
**516-620-1086**

**Title Order No.: 221257166**
**Escrow No.: 21-12039-SW**
**LOAN #: 2111075235**

------ [Space Above This Line For Recording Data] ------

# DEED OF TRUST

| MIN 1015264-0000068282-6 |
| --- |
| MERS PHONE #: 1-888-679-6377 |

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
**(A) "Security Instrument"** means this document, which is dated **December 16, 2021,**                together with all Riders to this document.
**(B) "Borrower"** is    **SULEMAN IDDRISSU, A SINGLE MAN.**

Borrower's address is    **2803 S. Canfield Avenue, Los Angeles, CA 90034.**

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is    **Sprout Mortgage, LLC.**

Lender is    **A Limited Liability Company,**                        organized and existing under the laws of
**Delaware.**                                        Lender's address is    **1680 SW. St. Lucie West**
**Blvd., Suite 208, Port Saint Lucie, FL 34986.**

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01
ICE Mortgage Technology, Inc.                            Page 1 of 13                                CAEDEDL   0219
                                                                                                    CAEDEDL (CLS)
                                                                                                    12/15/2021 02:01 PM PST



**LOAN #: 2111075235**

**(D)** "**Trustee**" is    **LAWYERS TITLE COMPANY.**

**(E)** "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F)** "**Note**" means the promissory note signed by Borrower and dated **December 16, 2021.**        The Note states that Borrower owes Lender  **ONE MILLION FIFTY THOUSAND AND NO/100*** * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * Dollars (U.S.  **$1,050,000.00**        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **January 1, 2062.**

**(G)** "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

**(H)** "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I)** "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider        ☐ Condominium Rider            ☐ Second Home Rider
☐ Balloon Rider                ☐ Planned Unit Development Rider   ☐ Other(s) [specify]
☐ 1-4 Family Rider             ☐ Biweekly Payment Rider
☐ V.A. Rider

**(J)** "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K)** "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L)** "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)** "**Escrow Items**" means those items that are described in Section 3.

**(N)** "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O)** "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)** "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)** "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and



**LOAN #: 2111075235**

all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **County** [Type of Recording Jurisdiction] of **Los Angeles** [Name of Recording Jurisdiction]:

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".**
**APN #: 4301-001-032**

which currently has the address of    **2803 S CANFIELD AVE, LOS ANGELES,**

[Street] [City]

California **90034**            ("Property Address"):
        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice



**LOAN #: 2111075235**

to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

   **2.    Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

   If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

   Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

   **3.    Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

   Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

   The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.



LOAN #: 2111075235

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.  Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.  Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds,

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    Form 3005 1/01
ICE Mortgage Technology, Inc.                              Page 5 of 13

CAEDEDL   0219
CAEDEDL (CLS)
12/15/2021 02:01 PM PST

LOAN #: 2111075235

whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6.  Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7.  Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.  Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3005 1/01
ICE Mortgage Technology, Inc.                                    Page 6 of 13

CAEDEDL  0219
CAEDEDL (CLS)
12/15/2021 02:01 PM PST



LOAN #: 2111075235

from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b)  Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**    Form 3005 1/01
ICE Mortgage Technology, Inc.                          **Page 7 of 13**                                   CAEDEDL  0219
                                                                                                         CAEDEDL (CLS)
                                                                                                         12/15/2021 02:01 PM PST



LOAN #: 2111075235

period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

CALIFORNIA – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    Form 3005 1/01
ICE Mortgage Technology, Inc.                                  Page 8 of 13                              CAEDEDL  0219
                                                                                                        CAEDEDL (CLS)
                                                                                                     12/15/2021 02:01 PM PST



**LOAN #: 2111075235**

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all



**LOAN #: 2111075235**

sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b ) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).



**LOAN #: 2111075235**

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.



**LOAN #: 2111075235**

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

SULEMAN IDDRISSU                                                                    12/18/21 (Seal)
                                                                                        DATE

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of CALIFORNIA
County of LOS ANGELES

On 12/16/2021, before me, Julien Rickard, notary public
(here insert name and title of the officer), personally appeared SULEMAN IDDRISSU, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

   I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature

JULIEN RICKARD (NOTARY)

(SEAL)


JULIEN RICKARD
COMM. #2336045
Notary Public - California
Los Angeles County
My Comm. Expires Oct. 20, 2024

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01
ICE Mortgage Technology, Inc.                            Page 12 of 13

CAEDEDL   0219
CAEDEDL (CLS)
12/15/2021 02:01 PM PST

LOAN #: 2111075235

Lender: Sprout Mortgage, LLC
NMLS ID: 1844521
Broker: We Loan Money Inc
NMLS ID: 1279912
Loan Originator: Tomas  Johnson
NMLS ID: 1224625

# EXHIBIT "A"

THE LAND REFERRED TO HEREIN IS SITUATED IN THE COUNTY OF LOS ANGELES, STATE OF
CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 135 OF <u>TRACT NO. 14212</u>, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE
OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 308, PAGE(S) 30 THROUGH 32, INCLUSIVE OF
MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM THE MINERALS, OIL, GAS, AND OTHER HYDROCARBON SUBSTANCES LYING
BELOW THE SURFACE OF SAID LAND.

<u>ASSESSOR'S PARCEL NUMBER: 4301-001-032</u>






**This page is part of your document - DO NOT DISCARD**



## 20220284045



**Pages:**
**0007**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**03/11/22 AT 08:00AM**

| | |
|---|---:|
| FEES: | 35.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 110.00 |



**L E A D S H E E T**



**202203111130009**

**00022068429**



**013232062**

**SEQ:**
**01**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

*E465752*



**AB31935**

RECORDING REQUESTED BY:

LAWYERS TITLE

AND WHEN RECORDED MAIL TO:

Suleman IDDRISSU
9022 Hargis ST.
Los Angeles, CA 90034

AB31935

SPACE ABOVE THIS LINE FOR RECORDER'S USE

Master Covenant and Agreement

This page is added to provide adequate space for recording information.

Lawyers Title

Recording requested by and mail to:

Name: SULEMAN IDDRISSU

Address: 9022 HARGIS ST

City State Zip: LOS ANGELES, CA 90034

A B31935                                    Space Above This Line For Recorder's Use

### MASTER COVENANT AND AGREEMENT
### REGARDING ON-SITE STORMWATER MITIGATION MEASURES AND MAINTENANCE

I (We), the undersigned, hereby certify that I am (we are) the owner(s) of the hereinafter legally described real property ("Property") located in the City of Los Angeles, County of Los Angeles, State of California (please give the legal description):

LEGAL DESCRIPTION                          ACCOMMODATION

ASSESSOR'S ID# 4301001032 _____ TRACT NO. 14212 _____ BLOCK NO. --- _____ LOT NO 135

Site Address 2803 S. Canfield Ave, Los Angeles, CA 90034

In consideration of the City of Los Angeles allowing  residential _____ development on said Property, I (we) do hereby covenant and agree to install, operate and maintain in a good operable condition at all times, at my (our) sole cost, all on-site stormwater Best Management Practices (BMPs) per approved plans. The location and type of each BMP feature installed on the Subject Property is identified on the site diagram attached hereto as Exhibit 1. I (we) shall maintain, in accordance with the attached Operation & Maintenance Plan (Attachment 1), the following on-site stormwater BMPs:

☐ Rain Tank (min 55 gal): # of barrels: _____; _____ total gallons, with minimum of _____ Sq. Ft of vegetated landscaping

☐ Rain Tank / Cistern: # of tanks / cistern: _____; _____ total gallons, with minimum of _____ Sq. Ft of vegetated landscaping

☑ Porous pavement/pavers:  1,026 _____ Sq. Ft (for incidental rainfall); and / or _____ Sq. Ft. with _____ ft sub base

☑ Rain Garden (lined): # of rain gardens:  1 ___; 155 ____ total Sq. Ft.        ☐ Dry Well: _____ Cu. Ft.

☐ Rain Garden (unlined): # of rain gardens: _____; _____ total Sq. Ft.   ☐ Infiltration Trench: _____ Cu. Ft.

☐ Flow Thru Planter: # of planters: _____; _____ total Sq. Ft.          ☐ Green Roof: _____ Sq. Ft.

☑ Other:  one (1) sump pump for overflow _____

Owner further covenants and agrees that the above-described stormwater device(s) shall not be removed from the Subject Property unless a revised Plan is approved by the Bureau of Sanitation In the event that any portion of the above-specified on-site stormwater pollution removal device(s) or BMPs is modified, I (we) shall immediately provide the Bureau of Sanitation of the City of Los Angeles with a revised Plan for their approval, and sign and record a Supplemental Covenant and Agreement, specifying all of the on-site stormwater pollution removal device(s) and BMPs, as modified (along with a modified O&M Plan). No Supplemental Covenant and Agreement shall, in any way, limit or diminish my (our) General Maintenance Obligation.

This Master Covenant and Agreement, and all obligations herein, shall run with the Property and shall be binding upon any future owners, encumbrances, their successors, heirs or assigns and shall continue in effect until the Bureau of Sanitation approves the termination hereof.

Owner further covenants and agrees that if Owner hereafter sells the Subject Property, Owner shall provide printed educational materials to the buyer regarding the stormwater device(s) that are located on the Subject Property, including the type(s) and location(s) of all such devices, and instructions for properly maintaining all such devices.

✱ Suleman Iddrissu              ✱ Suleman I ddrissu

(Print Name of Property Owner)                              (Print Name of Property Owner)

_____        SEE ATTACHED            _____
(Signature of Property Owner)   NOTARIZED CERTIFICATE    (Signature of Property Owner)

Dated this  3  day of MARCH 20 22    Date: 3/03/22    Dated this _____ day of _____ 20____.
                                     Initial: ___

**(PLEASE ATTACH NOTARY ACKNOWLEDGEMENT)**   Space Below This Line For Bureau Internal Use

Permit No. 21010-20000-05520

Accepted by Department of Public Works, LA Sanitation and Environment for conformance with the "Instructions for Filing Covenant and Agreement Forms"? YES ☐ NO ☐;  If NO, reason: _____

_____        _____        Date: _____
(Print Name) Engineering Associate        (Signature)

Mail Tax Statements to Party Shown Above

**CALIFORNIA ACKNOWLEDGMENT**                                        CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _Los ANGeles_

On _March 03, 2022_ before me, _HiJung Lee (NOTARY Public)_
　　　　　*Date*　　　　　　　　　　　　　　　　*Here Insert Name and Title of the Officer*

personally appeared _Suleman IDDRISSU_
　　　　　　　　　　　　　　　*Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

> HIJUNG LEE
> Notary Public - California
> Los Angeles County
> Commission # 2325586
> My Comm. Expires Apr 25, 2024

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
　　　　　　　*Signature of Notary Public*

*Place Notary Seal and/or Stamp Above*

———————————————— **OPTIONAL** ————————————————

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _Master Covenant and Agreement #430100103z_
Document Date: _3/03/2022  permit 2010-20000-05520_ Number of Pages: _ONE_
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____　　Signer's Name: _____
☐ Corporate Officer — Title(s): _____　　☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General　　　　☐ Partner — ☐ Limited ☐ General
☐ Individual　　☐ Attorney in Fact　　☐ Individual　　☐ Attorney in Fact
☐ Trustee　　　☐ Guardian or Conservator　☐ Trustee　　　☐ Guardian or Conservator
☐ Other: _____　　　　☐ Other: _____
Signer is Representing: _____　　Signer is Representing: _____

©2019 National Notary Association



EXHIBIT-1

SITE PLAN

2803 S. CANFIELD AVENUE

## ATTACHMENT 1

### Operation & Maintenance Plan - Rain Garden (Biofiltration)

- Rain gardens will be irrigated deeply once a week during dry months to encourage root growth and keep plants strong, especially while plants are being established. Plants will be inspected for health and weeds will be removed as often as necessary.

- Rain gardens will be monitored after storm events for signs of overflow. If overflow occurs significantly or often, the size and/or depth of the garden may need to be increased, or other actions to increase infiltration (e.g., soil amendments, under drain installation) may be necessary.

- Signs of erosion will be repaired immediately. Further erosion can be prevented by reinforcing the surrounding area with groundcover or using energy dispersion techniques on downspouts.

- Infiltration effectiveness and excess sediment deposition will be monitored annually, preferably prior to the start of the rainy season.

- Standing water will not remain in a rain garden for more than 3 days. Extended periods of flooding will not only kill vegetation, but may result in the breeding of mosquitoes or other vectors. If vector breeding occurs at a site as a result of contained stormwater or inadequately maintained BMPs, the Greater Los Angeles County Vector Control District has the ability to fine site owners for violating the California Health and Safety Code (Section 2060 – 2067).

- Rain gutters and downspouts will be inspected and cleaned at least twice annually.

### Maintenance Log

Keep a log of all inspection and maintenance performed on the rain garden. Keep this log on-site.



SECTION
NOT TO SCALE

# ATTACHMENT 1

## Operation & Maintenance Plan - Permeable Pavers

- Pavement will be inspected after rains for pooling or other visible problems. Surface clogging or movement of modular pavers can cause problems with both drainage and pavement function. Missing sand or gravel between pavers will be replaced as necessary.

- Pavement will be inspected for vegetation. Depending on the type of pavement and growth, vegetation may need to be removed. Home owners have talked with the contractor or manufacturer for additional maintenance requirements for their specific installation.

- Permeable pavement can involve significant maintenance, depending on the type of pavement installed.

- If a pretreatment sedimentation catch basin or trench drain was incorporated in the design, accumulated sediments should be removed once they fill twenty percent of the catch basin or trench drain's capacity.

## Maintenance Log

Keep a log of all inspection and maintenance performed on the permeable pavers. Keep this log on-site.

